J-S23042-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| IN RE: ADOPTION OF: A.D.H. IN RE: ADOPTION OF: A.M.H. | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: A.K. | : : : : : : : : | |
| | : | No. 34 WDA 2019 |

Appeal from the Decree Entered November 16, 2018
In the Court of Common Pleas of Cambria County Orphans' Court at
No(s): No. 2018-230 IVT,
No. 2018-231 IVT

BEFORE: BENDER, P.J.E., NICHOLS, J., and COLINS*, J.

MEMORANDUM BY COLINS, J.:                    FILED JUNE 11, 2019

A.K. ("Mother") appeals from the decree entered on November 16, 2018, that involuntarily terminated her parental rights to her daughters, A.D.H., born in February of 2014, and A.M.H., born in May of 2015, (collectively, "Children"), pursuant to the Adoption Act, 23 Pa.C.S. § 2511(a)(8) and (b).[1] We affirm.

The factual and procedural history underlying this appeal is as follows. Children were removed from Mother's care in May of 2016 based upon concerns regarding Mother's significant drug use; her homelessness; and her hospitalization at the psychiatric unit at Conemaugh Memorial Medical Center in Johnstown, Pennsylvania. Final Decree, 11/16/18, at ¶ 3; N.T. 5/14/18,

_____

[1] The court also involuntarily terminated the parental rights of Children's father, M.A.H. ("Father"). Father did not file a notice of appeal, nor did he participate in this appeal.

_____

*   Retired Senior Judge assigned to the Superior Court.

Vol. I, at 8-9. Father was not a placement resource as he was attending a long-term drug and alcohol rehabilitation center. Id. On June 8, 2016, the court adjudicated Children dependent. Final Decree, 11/16/18, at ¶ 5. Mother was ordered to undergo a drug and alcohol evaluation and to follow all recommendations; submit to random drug screenings; receive a psychological evaluation; and no person with a history of violence, illegal drug or alcohol activity, abuse or neglect of children, or other criminal involvement could be used as a caretaker/babysitter for Children. Id.

Thereafter, Cambria County Children and Youth Service ("CYS") implemented a Family Service Plan ("FSP"). Among other things, the FSP required Mother to obtain a psychological evaluation and drug and alcohol evaluation and follow the recommendations; attend visitation with Children; cooperate with CYS; obtain and maintain housing; attend parenting skills training; and submit to drug testing. CYS's Exhibit 4, at unnumbered 2-7. The court conducted permanency review hearings in November of 2016 and April of 2017. At both hearings, the court determined Mother was moderately compliant with the permanency plan. Final Decree, 11/16/18, at ¶¶ 6-7. At the permanency review hearing on September 27, 2017, the court determined Mother substantially complied with the permanency plan. Id. at ¶ 8. The permanency review orders provided, "[i]f [Mother]'s fines are paid in full and there are no other concerns of [CYS, CYS] is directed to produce an Order to the [c]ourt to return the child to the home of [Mother.]" CYS's Exhibit 5,

Permanency Review Orders, 10/5/17, at unnumbered 3.[2] Further, the orders included a provision that required supervision for any visitation between Father and Children, and prohibited Mother from residing with any other adults.[3] Id. By order dated November 30, 2017, the juvenile court returned Children to Mother's care. CYS's Exhibit 5, Order of Court, 12/6/17.

After Children were returned to her care, Mother continued to rely on CYS and Children's foster mother for support. N.T., 5/14/18, Vol. I, at 16-19. Mother had Children's foster mother take Children for three of the six weekends Children were in Mother's care. Id. at 17-19. Further, the foster mother took Children to the doctor, purchased groceries for Mother, and paid a daycare bill. Id. On January 11, 2018, Mother called her CYS caseworker and questioned why she had to supervise Children's time with Father. Id. at 18-19. The caseworker informed Mother that CYS would supervise Father's visitation. Id.

The next day, January 12, 2018, Mother was arrested for shoplifting at J.C. Penney, and it was subsequently determined that Mother had left Children unsupervised in Father's care. Id. at 18-19, 52. Mother left Children in Father's care despite her belief that he had relapsed, and her understanding that doing so violated the court order precluding Father from having

_____

[2] CYS's Exhibit 5, which was admitted without objection at the termination hearing, see N.T., 5/14/18, Vol. I, at 10-11, contains numerous filings and orders relating to Children's dependency dockets.

[3] Father lived with Mother sporadically starting in May of 2017. N.T., 10/15/18, at 24-25, 33.

unsupervised contact with Children. N.T., 10/15/18, at 53, 66-67, 108. As a result, Children were again removed from Mother's care. N.T., 5/14/18, Vol. I, at 18-19.

Following her arrest, Mother spent thirteen days in prison. N.T., 10/15/18, at 97. In February of 2018, Mother tested positive for cocaine, fentanyl, and opiates, claiming that she needed to test positive after her release from jail to re-enter a drug treatment program.[4] N.T., 5/14/18, Vol. I, at 21-22. Mother subsequently pled guilty to charges arising out of the incident at J.C. Penney, as well as prior charges for shoplifting at Walmart in October of 2017. CYS's Exhibit 6; N.T., 5/14/18, Vol. I, at 62-63. Mother received a sentence of 24 months of probation. CYS's Exhibit 6; N.T., 10/15/18, at 97.

On February 9, 2018, the juvenile court issued orders changing Children's permanent placement goals to adoption. CYS's Exhibit 5, Dispositional Orders, 2/13/18, at unnumbered 2.[5] On March 9, 2018, CYS filed petitions to involuntarily terminate Mother's and Father's parental rights

---

[4] Although Mother claimed to CYS that she needed to test positive to re-enter treatment, her care provider denied this. N.T., 5/14/18, Vol. I, at 22. Further, Mother acknowledged, "so I did relapse while I wasn't in treatment for those couple of weeks after I got out of jail before I could go back into treatment." N.T., 10/15/18, at 116.

[5] There is no indication in the record that Mother filed an appeal from the goal change orders.

to Children. On May 14, 2018 and October 15, 2018 the trial court held evidentiary hearings on the termination petitions.

CYS presented the testimony of Barb Brzana, a CYS caseworker; Dennis Kashurba, a licensed psychologist who performed psychological evaluations for Mother and Father; Ashley Tronzo, Father's probation officer; Kathy Scaife, an employee of Independent Family Services Home Management Program ("IFS") who was assigned to assist Mother with meeting her FSP goals; Jennifer Drager, the program director at IFS; and Molly Humphrey, a visitation supervisor. Mother and Father each testified on their own behalf.[6]

---

[6] By orders dated March 9, 2018, the court appointed Attorney Suzann Lehmier to act as "court-appointed counsel" for Children. Subsequently, by order dated August 10, 2018, the court appointed Attorney Lehmier to represent Children's legal interests, and Attorney Richard Corcoran to serve as Children's guardian ad litem ("GAL"). At the conclusion of the hearing, Attorney Lehmier stated that she met with Children on several occasions to ascertain their preferred outcomes. N.T., 10/15/18, at 159-60. Attorney Lehmier noted that Children, then ages four and three, did not understand the intricacies of terminating Mother's parental rights or adoption. Id. at 160. Rather, they expressed that they loved Mother and their foster mother, and wanted to continue to see both of them and live with each some of the time. Id. at 159-61. See In re Adoption of L.B.M., 161 A.3d 172, 174-75, 180 (Pa. 2017) (plurality) (stating that, pursuant to 23 Pa.C.S. § 2313(a), a child who is the subject of a contested involuntary termination proceeding has a statutory right to counsel who discerns and advocates for the child's legal interests, defined as a child's preferred outcome); see also In re T.S., 192 A.3d 1080, 1089-1090, 1092-93 (Pa. 2018) (finding the preferred outcome of a child who is too young or non-communicative unascertainable in holding a child's statutory right to counsel not waivable and reaffirming the ability of an attorney-GAL to serve a dual role and represent a child's non-conflicting best interests and legal interests). Attorney Lehmier also filed a brief on behalf of Children, arguing that both Mother and Children's foster mother should continue to be a part of Children's lives. Children's Brief, at 4.

On November 16, 2018, the trial court entered the decree that involuntarily terminated Mother's parental rights to Children pursuant to 23 Pa.C.S. § 2511(a)(8) and (b). On December 12, 2018, Mother timely filed a notice of appeal and concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).[7]

On appeal, Mother raises one issue: "Did the [t]rial [c]ourt err in its determination that [CYS] had met its burden of proof in demonstrating by clear and convincing evidence that the interests of the minor children would be best served by termination of the parental rights of [Mother]?" Mother's Brief, at 7.

In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. In re: R.J.T., 608 Pa. 9, 9

---

[7] Mother's counsel improperly filed a single notice of appeal listing the separate docket numbers assigned to the termination petitions regarding each child. See Pa.R.A.P. 341, Note ("Where . . . one or more orders resolves issues arising on more than one docket or relating to more than one judgment, separate notices of appeal must be filed."); Commonwealth v. Walker, 185 A.3d 969, 977 (Pa. 2018) (holding that the failure to file separate notices of appeal from an order resolving issues on more than one docket "requires the appellate court to quash the appeal"). In light of this Court's recent decision in In the Matter of: M.P., 2019 WL 850581 at *2 (Pa. Super. filed Feb. 22, 2019) (declining to quash due to the appellant's noncompliance with Rule 341 but announcing that this Court would quash any noncompliant appeals filed after February 22, 2019), we decline to quash Mother's appeal.

A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. Id.; R.I.S., [614 Pa. 275, 284,] 36 A.3d 567, 572 (Pa. 2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Id.; see also Samuel Bassett v. Kia Motors America, Inc., 613 Pa. 371[, 455], 34 A.3d 1, 51 (Pa. 2011); Christianson v. Ely, [575 Pa. 647, 654-655], 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. Id.

As we discussed in R.J.T., there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. R.J.T., [608 Pa. at 28-30], 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. In re Adoption of Atencio, [539 Pa. 161, 165,] 650 A.2d 1064, 1066 (Pa. 1994).

In re Adoption of S.P., 616 Pa. 309, 325-26, 47 A.3d 817, 826-27 (2012).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. In re R.N.J., 985 A.2d 273, 276 (Pa. Super. 2009).

Moreover, we have explained:

[t]he standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

Id. (quoting In re J.L.C., 837 A.2d 1247, 1251 (Pa. Super. 2003)).

The trial court terminated Mother's parental rights pursuant to Section 2511(a)(8) and (b). Section 2511(a)(8) and (b) provides:

> (a) General rule.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> * * *
>
> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.
>
> * * *
>
> (b) Other considerations.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511.

The argument section of Mother's brief asserts the trial court erred in its determination that the "interests of the minor children would be best served by termination of the parental rights of [Mother]." Mother's Brief, at 11.

Mother includes a discussion of the general principles applicable to the termination of parental rights, followed by Mother's assertion:

> [T]he bilateral bonding between herself and the minor children has not been adequately considered by the trial court. [Mother] had been battling numerous issues including drug addiction, difficulty interacting with the father of the children, and a single shoplifting incident. But when faced with the prospect of losing her children, she expressed that exact willingness outlined above. The [t]rial [c]ourt even went so far as to mention all of the improvements that had been made. (Final Decree, at 13)[.] The CYS caseworker had commented that [Mother] was doing very well in her continuing efforts to maintain a strong and healthy relationship with the minor children. (Final Decree, at 9-10)[.] These culminated in the Judge himself stating that this evidence caused him hesitation. (Final Decree, at 13)[.]

> However, the court ultimately cites the missteps along [Mother]'s journey as the basis for termination. The best interests of the children cannot be met if [Mother] is not demonstrating any kind of progress. And when the review of [Mother]'s progress was halted by an unwillingness to consider the circumstances surrounding the missteps, or the failure to consider how much progression had been made despite a slip-up by [Mother], her willingness to progress evidenced by her meeting all requirements asked of her and continuing to strengthen the bond with her children was rendered moot.

> CONCLUSION

> Due to the fact that the trial court improperly reviewed and considered the progress made by [Mother] in her efforts to improve her parenting and ability to care for the minor children, there was not an adequate analysis of the 'bilateral bond' between [Mother] and the children. Because the relationship between the child and [Mother] was not truly considered, there was not an adequate review of the best interests of the child[ren] following the determination that termination could stand. In turn, this lead [sic] to a conclusion that was . . . in error. . . .

Id. at 12-14.

The trial court, in its decree, wrote:

- 9 -

Testimony was elicited from various witnesses who supplied services to the respondents stating that [Mother] kept a clean home and generally was making progress. [Mother] herself offered evidence that was positive to her position regarding having the children returned to her. That testimony caused the [c]ourt to hesitate. However, after reading all of the exhibits offered, . . . the [c]ourt found [CYS]'s evidence to be clear, direct, weighty, and convincing. Therefore, the [c]ourt finds that [CYS] has proven its case. [Mother]'s conduct in leaving the children with [Father], knowing that she was not permitted to do so, to supervise the children, was the final straw.

\* \* \*

The [c]ourt finds there is a bond between [Mother] and her children. In fact, the oldest child, [A.D.H.], has expressed a desire to continue to visit with her mother. However, . . . the children have been in out-of-home placement for 20 of the last 22 months, except for 43 days. While in [Mother]'s care, the girls spent 3 of the 6 weekends with their foster parents. Through the weekend visits the girls were spending with the foster parents, they accomplished having [A.M.H.] completely out of diapers. When [A.M.H.] returned to their home in foster care she was back in diapers. [A.M.H.] needed to be seen by a pediatrician due to her private area being red, raw, and peeling. The pediatrician believed this to be from neglect or changing the brand of diapers. However, it was confirmed that [Mother] was using the same brand of diapers that she had been consistently using. . . . CYS had afforded [Mother] opportunities to succeed repeatedly.

Final Decree, 11/16/18, at 12-14.

The court considered the safety needs of Children, as well as "intangibles such as love, comfort, security and stability, which these children have with their foster parents and do not have with their biological parents." Id. at 15. The trial court concluded that termination of Mother's parental rights best met the developmental, physical, and emotional needs and welfare of the children. Id.

Confronted with Mother's vague assertion regarding Children's "interests," we interpret her issue as a challenge to the trial court's analysis of Children's needs and welfare.[8] We observe that Section 2511(a)(8) and (b) both require a court considering a termination petition to assess the needs and welfare of the relevant child or children. However, the needs and welfare analysis required by Section 2511(a)(8) is distinct from the needs and welfare analysis required by Section 2511(b), and must be addressed separately. See In re C.L.G., 956 A.2d 999, 1009 (Pa. Super. 2008) (en banc) ("[W]hile both Section 2511(a)(8) and Section 2511(b) direct us to evaluate the 'needs and welfare of the child,' … they are distinct in that we must address Section 2511(a) before reaching Section 2511(b).")

With regard to Section 2511(a)(8), in order to terminate parental rights, an agency must prove by clear and convincing evidence:

> (1) that the child has been removed from the care of the parent for at least twelve (12) months; (2) that the conditions which had led to the removal or placement of the child still exist; and (3)

_____

[8] In her concise statement of errors complained of on appeal, Mother raised one issue, "the [t]rial [c]ourt erred by abusing its discretion in finding that [CYS] demonstrated by clear and convincing evidence that terminating the parental rights of A.K. will best meet the developmental, physical, emotional needs of A.D.H., and A.M.H." Concise Statement, 12/12/18. While we perceive Mother's argument on appeal to similarly assert the trial court erred in its analysis of Children's needs and welfare, any additional issue is waived. See Krebs v. United Refining Company of Pennsylvania, 893 A.2d 776, 797 (Pa. Super. 2006) (holding that an appellant waives issues that are not raised in both his concise statement of errors complained of on appeal and the statement of questions involved in his brief on appeal).

that termination of parental rights would best serve the needs and welfare of the child.

In re C.L.G., 956 A.2d 999, 1005 (Pa. Super. 2008) (en banc).

Instantly, Mother, in her brief, does not argue the trial court erred in its determination Children were removed from her care for at least 12 months, nor does she argue the trial court erred in its conclusion that the conditions which led to Children's removal or placement continued to exist. Mother's Brief, at 11-14. Accordingly, we focus on whether "termination of parental rights would best serve the needs and welfare of the child[ren]." See 23 Pa.C.S. § 2511(a)(8).

Our review of the record confirms that the trial court did not err in its conclusion that terminating Mother's parental rights best serves the needs and welfare of Children pursuant to Section 2511(a)(8). Children have been out of Mother's care for almost three years. N.T., 5/14/18, Vol. I, at 8. Despite the passage of time, Children and Mother continued to share a bond, and Mother can, at times, and with assistance, appropriately provide for Children's needs. Id. at 29, 32-35. However, during the limited time that Children were returned to her care, Mother still required help from CYS and Children's foster parents for groceries, transportation to doctor's appointments, and financial assistance. Id. at 16-19, 34-35. Further, Mother returned Children to their foster parents for three of the six weekends Children were with her. Id. at 17-19. Ms. Scaife, from IFS, testified that Mother never stabilized, and that

there was no indication Mother could parent Children independently. N.T., 10/15/18, at 18-19, 45.

Indeed, despite the assistance, Mother remained unstable, violating a court order by leaving Children in Father's care on January 12, 2018, when she believed that Father had relapsed. Id. at 53, 66-67, 108. Later that same day, she was arrested for shoplifting from J.C. Penney, and spent thirteen days in prison. N.T., 5/14/18, Vol. I, at 18-19, 52.; N.T., 10/15/18, at 97. As a result, Children were removed from Mother's care for a second time. Following Mother's release from prison, she then relapsed. N.T., 10/15/18, at 116. At the time of the termination hearing, Mother was again living with Father, because, "they were already terminating my rights, I didn't think I had a chance, that it didn't matter." Id. at 132-33. Ms. Drager, the IFS program director, testified that she had concerns that Mother would not consistently "make the best decision possible for the children on a day-to-day basis," opining, "[i]f there is a conflict there and she wants to meet her own needs above that of her children, she is going to meet her needs first." N.T., 10/15/18, at 77.

In Mother's absence, Children, who live in the same foster home, have been cared for by foster parents who Mother acknowledged take very good care of Children and meet their needs. N.T., 5/14/18, Vol. I, at 28; N.T., 10/15/18, at 115. Ms. Brzana testified that A.D.H. is doing exceptionally well in foster care and is very bonded with her foster family. N.T., 5/14/18, Vol.

I, at 28. A.D.H. had no issues in the home and has indicated that she wants to stay with the foster family. Id. Similarly, A.M.H. is very bonded to the foster family. Id. at 30. Children refer to their foster parents as "mommy and daddy," calling Mother and Father "their other mom and other dad." Id. at 30, 57.

When Children were placed with their foster parents for the second time, Ms. Brzana observed Children were happy to see their foster parents, and, "because the girls were used to going for weekends and going to see the [foster parents], it was a smooth transition. The girls weren't upset at all because this was normal for them to go with the foster mom." Id. at 30. Ms. Brzana opined that, despite Children's bond with Mother, terminating Mother's parental rights would promote Children's developmental, physical, and emotional needs. Id. at 35.

Accordingly, the record supports the trial court's conclusion that termination of Mother's parental rights pursuant to Section 2511(a)(8) meets Children's needs and welfare. While Mother suggests that her progress shows that she can meet Children's needs and welfare, we disagree. The record demonstrates that after nearly two years of assistance, Mother continued to be unstable and failed to appropriately care for Children. Further, the trial court appropriately considered the bond between Children and Mother, as well as Children's relationship with their foster parents, with whom they have

resided for more than half of their lives. The trial court did not err in terminating Mother's parental rights pursuant to Section 2511(a)(8).

This Court has stated that the focus in terminating parental rights under Section 2511(a) is on the parent, but it is on the child pursuant to Section 2511(b). See In re Adoption of C.L.G., 956 A.2d 999, 1008 (Pa. Super. 2008) (en banc). In reviewing the evidence in support of termination under Section 2511(b), our Supreme Court has stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." In re K.M., 53 A.3d 781, 791 (Pa. Super. 2012). In In re E.M., [533 Pa. 115, 121, 620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. In re K.M., 53 A.3d at 791.

In re T.S.M., 620 Pa. 602, 628-629, 71 A.3d 251, 267 (2013).

When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, section 2511(b) does not require a formal bonding evaluation." In re Z.P., 994 A.2d 1108, 1121 (Pa. Super. 2010) (internal citations omitted). Although it is often wise to have a bonding evaluation and make it part of the certified record, "[t]here are some instances . . . where direct observation of the interaction between the parent and the child is not

necessary and may even be detrimental to the child." In re K.Z.S., 946 A.2d 753, 762 (Pa. Super. 2008).

A parent's abuse and neglect are likewise a relevant part of this analysis:

concluding a child has a beneficial bond with a parent simply because the child harbors affection for the parent is not only dangerous, it is logically unsound. If a child's feelings were the dispositive factor in the bonding analysis, the analysis would be reduced to an exercise in semantics as it is the rare child who, after being subject to neglect and abuse, is able to sift through the emotional wreckage and completely disavow a parent . . . Nor are we of the opinion that the biological connection between [the parent] and the children is sufficient in of itself, or when considered in connection with a child's feeling toward a parent, to establish a de facto beneficial bond exists. The psychological aspect of parenthood is more important in terms of the development of the child and [his or her] mental and emotional health than the coincidence of biological or natural parenthood.

In re K.K.R.-S., 958 A.2d 529, 535 (Pa. Super. 2008) (internal citations and quotation marks omitted).

Our Supreme Court has stated that the mere existence of a bond or attachment of a child to a parent will not necessarily result in the denial of a termination petition, and that "[e]ven the most abused of children will often harbor some positive emotion towards the abusive parent." See In re T.S.M., 620 Pa. 602, 627, 71 A.3d 251, 267 (2013) (quoting In re K.K.R.-S., 958 A.2d 529, 535 (Pa. Super. 2008)). The Supreme Court stated: "[t]he continued attachment to the natural parents, despite serious parental rejection through abuse and neglect, and failure to correct parenting and behavior disorders which are harming the children cannot be misconstrued as bonding." See In re T.S.M., 620 Pa. at 629, 71 A.3d at 267 (quoting In re

- 16 -

Involuntary Termination of C.W.S.M., 839 A.2d 410, 418 (Pa. Super. 2003) (Tamilia, J. dissenting)).

Thus, the court may emphasize the safety needs of the child. See In re K.Z.S., 946 A.2d at 763 (affirming involuntary termination of parental rights, despite existence of some bond, where placement with mother would be contrary to child's best interests). "[A] parent's basic constitutional right to the custody and rearing of . . . her child is converted, upon the failure to fulfill . . . her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." In re B.,N.M., 856 A.2d 847, 856 (Pa. Super. 2004) (internal citations omitted).

The record supports the trial court's conclusion that termination of Mother's parental rights is appropriate pursuant to Section 2511(b). Contrary to Mother's argument, the trial court appropriately considered Mother's bond with Children. However, Children share a parental bond with their foster parents, with whom they have resided for more than half of their lives. Further, Children have been well cared for by their foster parents, and preserving Mother's parental rights would serve only to deny Children the permanence and stability to which they are entitled. See C.D.R., 111 A.3d at 1220 ("Clearly, it would not be in Child's best interest for his life to remain on hold indefinitely in hopes that Mother will one day be able to act as his parent."). Accordingly, the trial court did not err in terminating Mother's parental rights pursuant to Section 2511(b).

For the foregoing reasons, we conclude that the trial court did not err by involuntarily terminating Mother's parental rights to Children.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/11/2019